**THIS ORDER IS SIGNED AND ENTERED.**

Dated: April 11, 2012

_____
**Hon. Robert D. Martin
United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Jason R. Herbst,

(Chapter 13)

Debtor.                                                                        Case No. 12-11044

MEMORANDUM DECISION

Jason Herbst (the debtor) filed a Chapter 13 petition on February 29, 2012, and a Motion for Contempt and for Return of Property on March 6, 2012. He alleges that Talmer Bank & Trust (the bank) violated the automatic stay by refusing to return equipment that the bank repossessed prepetition.

The repossessed equipment was the subject to security agreements that provided as a remedy for default, the bank "may repossess the Property so long as the repossession does not involve a breach of the peace. [The bank] may sell, lease, or otherwise dispose of the Property as provided by law." The debtor defaulted, and in March 2011, the bank filed a complaint for replevin in

1

Lafayette County. A default judgment was entered against the debtor on May 16, 2011, which states:

> "…Plaintiff is entitled to possess and sell the following collateral:
>
> Machinery, vehicles, fixtures, farm machinery and equipment, shop equipment, office and record keeping equipment, parts and tools
>
> Farm products, crops, feed, seed, fertilizer, medicines and supplies.
>
> All government program payments.
>
> 2004 Kawasaki Ninja 250R VIN: JKADXMF164DA06034
>
> 2005 Chevrolet truck VIN: 1GCJK33215F920432
>
> Plaintiff may sell said collateral as provided in the Security Agreements subject to this action and apply the net sale proceeds to the above stated sum adjudged due and owing from Defendant to Plaintiff…
>
> Plaintiff shall be entitled to issuance of a Writ of Replevin upon request of plaintiff."

Under a Writ of Replevin, the bank repossessed five items of equipment on December 8, 2011, and placed them at an auction house. There is no evidence that a sale or other disposition has yet occurred. Nor is there evidence that a contract for disposition was formed. The bank has refused to release the replevied equipment. The debtor seeks to have the bank adjudged to be in contempt for violation of the § 362(a) stay. He also seeks actual and punitive damages (including costs and attorney fees), and the return of the collateral to the debtor.

11 U.S.C. § 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." In the Seventh

Circuit, the act of passively holding an asset of the estate constitutes "exercising control" over it in violation of § 362(a)(3), even when the asset was lawfully repossessed prepetition. *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 703 (7th Cir. 2009). The Court of Appeals based its holding in part on *United States v. Whiting Pools*. In *Whiting Pools*, the IRS seized Whiting's equipment and other personal property to satisfy a tax lien. *United States v. Whiting Pools*, 462 U.S. 198, 199-200 (1983). The next day, Whiting filed a Chapter 11 petition. *Id*. at 200. The United States intended to sell the property, and moved for a declaration that the automatic stay was inapplicable to the IRS, or in the alternative, for relief from stay. *Id*. at 201. The Supreme Court held that § 542(a) required the IRS to return the assets it had seized but not yet disposed of. *Id*. at 211-12. According to the Supreme Court, the bankruptcy estate includes property of the debtor that a creditor seized prepetition. *Id.* at 209. Section 542(a) requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee. *Id.* at 205. Property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate. *Id*. at 205-06.

The Supreme Court noted that "if a tax levy or seizure transfers to the IRS ownership of the property seized, § 542(a) may not apply." *Id*. at 209. But that was not the case in *Whiting Pools*. The Supreme Court reasoned that the Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its liens, and are analogous to the remedies available to private secured creditors. *Id*. at 210-11. These remedies "do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody." *Id*. at 211. The Court concluded that until a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of § 542(a). *Id*.

The Seventh Circuit Court of Appeals relied on *Whiting Pools* when it held that a creditor violated § 362(a)(3) by retaining the debtor's property that it repossessed prepetition. *Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 703 (7th Cir. 2009). In *Thompson*, a debtor entered into an installment contract with General Motors Acceptance Corporation (GMAC) for the purchase of a vehicle. *Id*. at 700-01. The debtor defaulted on the payments, and GMAC repossessed the vehicle. *Id*. at 701. Several days later, the debtor filed for Chapter 13 bankruptcy and requested that GMAC return his vehicle. *Id*. GMAC refused, and the debtor moved for sanctions pursuant to § 362(k). *Id*. The Seventh Circuit Court of Appeals noted *Whiting Pools*' principal that the primary goal of bankruptcy reorganization is to group all of the debtor's property together so he may rehabilitate his credit and pay off his debts. *Id*. at 702. In light of this, the court of appeals held that the act of passively holding onto an asset of the estate is "exercising control" over it in violation of § 362(a)(3), even when the asset was lawfully repossessed prepetition. *Id.* at 703.

The court of appeals held that GMAC must first return the vehicle and then, if necessary, seek adequate protection of its interests in the bankruptcy court. *Id*. at 708. The court observed that the secured creditor has the burden of requesting adequate protection for its interest either directly under 11 U.S.C. § 363(e) or by moving for relief from the stay under 11 U.S.C. § 362(d)(1). *Id*. at 703-04. The court reasoned that if a creditor is allowed to retain possession, "then this burden is rendered meaningless--a creditor has no incentive to seek protection of an asset of which it already has possession." *Id*. at 704. The court concluded that in order for the language of 11 U.S.C. § 363(e) to have meaning, Congress must have intended for the asset to be returned to the bankruptcy estate before the creditor seeks protection of its interest. *Id*. The court of appeals also pointed to *Whiting Pools*' interpretation of § 542(a) as support for its

conclusion that GMAC must first return the vehicle before seeking adequate protection. *Id*. The court of appeals did not require the debtor to seek turnover under § 542(a) before regaining possession of the vehicle.

In Wisconsin, a judgment in replevin allows "for the possession or for the recovery of possession of the property, or the value thereof in case a delivery cannot be had, and of damages for the detention…" Wis. Stat. § 810.14. Replevin is primarily a possessory action – it does not necessarily involve ownership of the property. *See Huesmann v. Sakowski*, 1992 Wis. App. LEXIS 365 *4 (Wis. Ct. App. 1992). However, both legal and equitable rights may be determined in such [replevin] action, and the equities to be settled must relate to the property or the rights arising out of the contract. *Id*. at *5.

In *In re Karis*, Judge Utschig held that FSA did not violate the automatic stay when it repossessed the debtor's cattle prepetition, because the language in the judgment of replevin terminated the debtors' rights to the collateral. *In re Karis*, 208 B.R. 913 (Bankr. W.D. Wis. 1997). FSA had obtained a judgment of replevin, which stated: "IT IS FURTHER ORDERED that the defendants, their heirs, successors or assigns, and all persons claiming under them, be forever barred and foreclosed of all right, title, interest and equity of redemption in said mortgaged collateral." *Id*. at 916. Judge Utschig concluded that when FSA arrived on the farm to collect the cattle, the debtors had only a possessory interest in the cows. *Id*. at 917. Any other interest in the cattle had been extinguished by the foreclosure judgment. *Id*. Therefore, when the debtors filed bankruptcy, the debtors did not retain a right of redemption or other equitable interest. *Id*. Because the debtors' rights to the cattle were terminated prior to the filing, there was no interest that could have been transferred to the bankruptcy estate. *Id*.

5

In this case, the default judgment does not extinguish "all right, title, interest and equity of redemption" the way the judgment in *In re Karis* did. The default judgment gives the bank the right to repossess and sell the collateral. The bank has repossessed the collateral, but it has not yet sold it. The grip of the automatic stay depends on how far the foreclosing creditor has gone before the petition is filed. 1 *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 6.08[1][a] (3d ed. 2012). As long as some right of redemption remains, the stay is still applicable. *Id*.

Wisconsin law indicates that the debtor retains a right of redemption as long as a sale or contract for sale has not occurred. Wisconsin Statute § 409.623 governs a debtor's right to redeem collateral. It states:

> (1) Persons that may redeem. A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.
>
> (2) Requirements for redemption. To redeem collateral, a person shall tender:
>
>> (a) Fulfillment of all obligations secured by the collateral; and
>>
>> (b) The reasonable expenses and attorney fees described in s. 409.615(1)(a).
>
> (3) When redemption may occur. A redemption may occur at any time before a secured party:
>
>> (a) Has collected collateral under s. 409.607;
>>
>> (b) Has disposed of collateral or entered into a contract for its disposition under s. 409.610; or
>>
>> (c) Has accepted collateral in full or partial satisfaction of the obligation it secures under s. 409.622.

Subsections (a) – (c) of section (3) are written in the disjunctive, and redemption will be terminated by any of the three listed scenarios. The language in this statute is virtually identical

6

to the Uniform Commercial Code § 9-623, as Wisconsin adopted U.C.C. Revised Article 9. *See National Operating, L.P. v. Mutual Life Ins. Co. of New York*, 244 Wis. 2d 839, ¶ 99 & n.19 (2001). Official Comment 2 to U.C.C. § 9-623 states "[u]nder this section…the debtor or another secured party may redeem collateral as long as the secured party has not collected (Section 9-607), disposed of or contracted for the disposition of (Section 9-610), or accepted (Section 9-620) the collateral." Thus, the Article 9 redemption right is cut off when the creditor has disposed of the collateral at foreclosure or has entered into a contract for disposition. 1 *The Law of Secured Transactions Under the Uniform Commercial Code*, ¶ 4.11[2] (3d ed. 2012). A mere contract to engage an auctioneer prior to a proposed public sale "would not seem to be sufficient to cut off the debtor's right of redemption." *Id*.

The phrase "collection of collateral" under Revised U.C.C. § 9-623 is new, but the listing is apparently a clarification, rather than a substantive change. 1 *Secured Transactions Under the Uniform Commercial Code*, § 8.16[2] (Matthew Bender 2012). "Case law holding that the right of redemption is not cut off by preparation for sale remains good." *Id*. Prior to Article 9's revision, the Wisconsin Supreme Court asserted that a debtor has a right to redeem until the secured party disposes of or contracts to dispose of the collateral. *See National Operating, L.P. v. Mutual Life Ins. Co. of New York*, 244 Wis. 2d 839, ¶ 45 (2001). Read with the treatises, the right of redemption until sale apparently still exists in Wisconsin, notwithstanding the added language "collection of collateral" in Wis. Stat. § 409.623(3)(c). Since the debtor retains the right to redemption in this case, the stay still applies to the collateral the bank seized prepetition.

Even if the debtor's right to redeem the collateral expired when the bank repossessed it, ownership of the collateral remains with the debtor until it is sold. Wisconsin statute § 409.617(a) states that a secured party's disposition of collateral after default "transfers to a

7

transferee for value all of the debtor's rights in the collateral." Contrary to the bank's assertion that it holds title to the collateral by virtue of its repossession, this statute indicates that before disposition, the debtor retains any rights he or she has to the property.

In this case, the bank has collected the property, but has not yet sold the property. Under Wis. Stat. § 409.623(3), the debtor retains the right to redeem the property until it is sold or a contract for disposition has been entered into. No evidence of a contract for disposition was presented. The collateral has not yet been transferred to a transferee, so the debtor's rights have not yet been transferred. Wis. Stat. § 409.617(a). Unlike the judgment in *In re Karis*, the judgment for replevin here did not extinguish the debtor's legal and equitable interests in the property. Since the debtor's interest in the property remains until it is sold, it is property of the estate, and subject to the automatic stay. Therefore, by the principals in *Whiting Pools* and Seventh Circuit Court of Appeals' reasoning in *Thompson*, the bank is in violation of § 362(a)(3) by retaining the collateral.

Under *Thompson*, the bank is required to return the collateral. The court of appeals stated that while *Whiting Pools* did not address whether a creditor must turn over a seized asset before seeking adequate protection, the Supreme Court's language indicated that it favored the approach where the creditor first turns over the seized asset. *Thompson*, 566 F.3d at 706. Combined with its reading of §§ 362(a)(3) and 542, the court of appeals found that "upon the request of a debtor that has filed for of [sic] bankruptcy, a creditor must first return an asset in which the debtor has an interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court." *Id*. at 708.

8

While the bank is required to return the collateral, the evidence does not establish that the debtor is entitled to actual damages for a willful violation of the stay. 11 U.S.C. § 362(k)(1) provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Whether the secured creditor "believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008). A violation of the stay is "willful" even if the actor believes himself justified. *See In re Radcliffe*, 390 B.R. 881, 891 (N.D. Ind. 2008), *aff'd*, 563 F.3d 627 (7th Cir. 2009). A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding. *In re Radcliffe*, 563 F.3d at 631. Courts have awarded actual damages, costs, and attorneys' fees for willful violations of the stay. *See United States v. Price*, 176 B.R. 807, 809 (N.D. Ill. 2006). 11 U.S.C. § 342(g)(2) provides that "[a] monetary penalty may not be imposed on a creditor for a violation of a stay … unless the conduct that is the basis of such violation or of such failure occurs after such creditor receives notice effective under this section of the order for relief."

In this case, there is some evidence to establish a willful violation of the stay. According to the debtor, his counsel notified the bank of the bankruptcy petition on February 29, 2012 and demanded that the bank return the collateral. The bank does not deny receiving notice of the bankruptcy and refusing to return the collateral, but argued that it was justified in keeping it because of the replevin judgment. Nothing in the record definitively establishes that such notice was given, but this is most likely what occurred. The bank may have believed that it was legally entitled to retain possession of the collateral in light of the judgment, but a violation of the stay is

9

"willful" even if the actor believes himself justified.  Since the bank knew of the bankruptcy filing and still retained possession of the collateral, it willfully violated the stay.  Therefore, the bank is in contempt until it returns the collateral.  Because the debtor provided no basis to conclude that he was injured by this willful violation, damages cannot be awarded at this time.  However, upon proof of reasonable costs and attorneys' fees incurred in pursuing this contempt action, damages in that amount can be assessed.

For these reasons, the debtor's Motion for Contempt Order and for Return of Property is GRANTED.  It will be so ordered.

###